# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# MACON DIVISION

| | |
|---|---|
| PANAPRINT, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 5:17-CV-140 (MTT) |
| | ) |
| C2 MULTI MEDIA, INC., AND | ) |
| CORDACO HOMES, INC., | ) |
| | ) |
| Defendants. | ) |

## ORDER

Plaintiff Panaprint, Inc. alleges that Defendants C2 Multi Media, Inc. and Cordaco Homes, Inc. breached their contracts to use Panaprint to print magazines by unilaterally canceling the contracts in violation of the Uniform Commercial Code or, in the alternative, general contract law. *See generally* Doc. 1-1. C2 Multi Media and Cordaco Homes, which share the same address and two owners, removed the case to this Court, invoking diversity jurisdiction as to the claim against C2 Multi Media and diversity or supplemental jurisdiction as to the claim against Cordaco Homes. Docs. 1 at 2-4, 8-10, 12-13; 1-1 at 1. C2 Multi Media and Cordaco Homes now move to dismiss Panaprint's complaint for failure to state a claim on which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). Doc. 2. C2 Multi Media and Cordaco Homes argue that the signed documents that Panaprint alleges are contracts are, instead, price quotations which did not obligate C2 Multi Media and Cordaco Homes to purchase any magazines from Panaprint. Doc. 2 at 1-3. For the reasons discussed below, the Court agrees that Panaprint's complaint is deficient, but the Court gives

Panaprint an opportunity to amend. Accordingly, Panaprint is **ORDERED** to amend its complaint within 14 days to allege additional facts sufficient to state a claim for which relief may be granted, if it believes it can do so in good faith.

## I. BACKGROUND

Panaprint asserts that it began supplying C2 Multi Media and Cordaco Homes with "printed products" in 2009. Doc. 1-1 ¶ 8. Specifically, Panaprint produced a magazine called "Resource Living Magazine" for C2 Multi Media and magazines called "Cordaco Luxury," "Quarterfold Magazine Options," and "Broward Options" for Cordaco Homes. *Id.* ¶¶ 9-10. Panaprint sent quotations to C2 Multi Media and Cordaco Homes, and "[i]f the quotation was acceptable . . . then C2 Multi Media or Cordaco Homes contracted to do business with Panaprint by having an authorized representative sign or initial the quotation and returning it to Panaprint." *Id.* ¶ 11.

C2 Multi Media returned a signed quotation to Panaprint guaranteeing the prices quoted from August 1, 2016 to July 31, 2018. *Id.* ¶¶ 12-13. Cordaco Homes returned a signed quotation to Panaprint to guarantee the prices quoted from June 4, 2015 to December 31, 2016. *Id.* ¶ 18. On June 30, 2016, the owners of C2 Multi Media and Cordaco Homes mailed Panaprint a notice that they had "decided to print our Resource Living and Cordaco Homes Titles with another vendor." Doc. 1-8. Panaprint argues that the cancellation letter constituted a breach of contract under the Uniform Commercial Code or, in the alternative, under general contract law and therefore Panaprint is entitled to damages arising from the breach, as well as attorney's fees and litigation costs. Doc. 1-1 ¶¶ 20-22, 24-26, 30, 34, 36.[1]

---

[1] C2 Multi Media and Cordaco Homes are distinct business entities which entered into separate contracts with Panaprint. Doc. 1-1 ¶¶ 2-3. But they share an address, the same exclusive owners, and counsel in

C2 Multi Media and Cordaco Homes removed the case to federal court and have moved to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). Docs. 1; 2.[2]

## II. DISCUSSION

### A. Motion to Dismiss Standard

The Federal Rules of Civil Procedure require that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To avoid dismissal pursuant to Rule 12(b)(6), a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Ashcroft*

---

this case, and the same letter constituted the alleged breach for both. Docs. 1 at 3, 16; 1-1 ¶¶ 5-6, 15, 17. Accordingly, both parties logically treat the allegations against C2 Multi Media and Cordaco Homes together for purposes of the motion to dismiss. *See* Doc. 9 at 1 n.1 ("[T]he Plaintiff's response does not draw any distinction between the contracts for the purpose of resolving the Defendants' Motion to Dismiss."). The Court does the same.

[2] C2 Multi Media and Cordaco Homes invoke the Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332(a), which gives federal district courts original jurisdiction in cases between citizens of different states "where the matter in controversy exceeds the sum or value of $75,000." Doc. 1 at 2. "[W]here jurisdiction is based on a claim for indeterminate damages . . . the party seeking to invoke federal jurisdiction bears the burden of proving by a preponderance of the evidence that the claim on which it is basing jurisdiction meets the jurisdictional minimum." *Federated Mut. Ins. Co. v. McKinnon Motors, LLC*, 329 F.3d 805, 807 (11th Cir. 2003) (citations omitted). Panaprint's complaint shows that the parties are completely diverse. Doc. 1-1 ¶¶ 4-6. As to the amount in controversy, the Court agrees that Panaprint's breach of contract claim against C2 Multi Media clearly appears to exceed $75,000. *See* Doc. 1 at 6-8 (demonstrating that the statutory requirement for amount in controversy is probably exceeded pursuant to multiple methods of estimation). C2 Multi Media and Cordaco Homes argue that, while the damages arising from Cordaco Homes's alleged breach are smaller than those arising from C2 Multi Media's breach, the Court has jurisdiction over that claim as well because (1) amount in controversy "could easily approach or exceed" $75,000 when attorney's fees and litigation costs are included, or (2) supplemental jurisdiction exists pursuant to 28 U.S.C. § 1367(a). Doc. 1 at 8-14. The Court is not convinced, on this record, that attorney's fees and litigation costs will bring the amount in controversy of the Cordaco Homes claim above $75,000. But 28 U.S.C. § 1367(a) vests district courts with "supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." In this case, the claims against Cordaco Homes arise from the same letter as the claims against C2 Multi Media; Panaprint is the plaintiff alleging breach in both claims, the alleged contracts at issue in the claims against are very similar, and resolving the claims against both will involve overlapping evidence and legal and factual issues. *See generally* Doc. 1-1. Accordingly, the Court exercises its supplemental jurisdiction over the claims against Cordaco Homes. *See Palmer v. Hosp. Auth. of Randolph Cty.*, 22 F.3d 1559, 1563-64 (11th Cir. 1994) ("The Georgia Plaintiffs' state-law claims all arise from the same two events as the [federal] claims. They will involve the same witnesses, presentation of the same evidence, and determination of the same, or very similar, facts. Accordingly, it was within the power of the district court to exercise supplemental jurisdiction over the state-law claims . . . .").

*v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." *Garfield v. NDC Health Corp.,* 466 F.3d 1255, 1261 (11th Cir. 2006) (quotation marks and citation omitted). However, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal,* 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). "[C]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002) (citations omitted). The complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly,* 550 U.S. at 555 (quotation marks and citation omitted). Where there are dispositive issues of law, a court may dismiss a claim regardless of the alleged facts. *Marshall Cty. Bd. of Educ. v. Marshall Cty. Gas Dist.,* 992 F.2d 1171, 1174 (11th Cir. 1993) (citations omitted).

**B.    Applicable Georgia Law**

The alleged contracts in this case provide that the agreements be interpreted according to Georgia law. Doc. 1-1 at 15, 18. Further, the documents were drafted by and mailed to Panaprint, whose address is located in Macon, Georgia. *Id*. at 14-15, 17-18; *see In re Club Assocs.*, 951 F.2d 1223, 1229 (11th Cir. 1992) ("Executed in Georgia, the security deed is governed by Georgia contract law, *lex loci contractus.*" (citation omitted)). Panaprint has alleged claims for breach of contract under the Uniform

Commercial Code. In the alternative, Panaprint has alleged breach of contract under general contract law.

As to claims under the Uniform Commercial Code, in Georgia:

> Except as otherwise provided in this Code section a contract for the sale of goods for the price of $500.00 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker. A writing is not insufficient because it omits or incorrectly states a term agreed upon but the contract is not enforceable under this paragraph beyond the quantity of goods shown in such writing.

O.C.G.A. § 11-2-201(1). "A contract for sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract." O.C.G.A. § 11-2-204(1). Certain "parol evidence" outside the four corners of the agreement, such as the parties' previous course of performance or dealing or trade usage, may not be used to contradict contract terms but may be used to "explain[] or supplement[]" contract terms. O.C.G.A. § 11-2-202.

As to Panaprint's claims in the alternative under general contract law, Georgia law is similar. "To constitute a valid contract, there must be parties able to contract, a consideration moving to the contract, the assent of the parties to the terms of the contract, and a subject matter upon which the contract can operate." O.C.G.A. § 13-3-1. "The cardinal rule of construction is to ascertain the intention of the parties." O.C.G.A. § 13-2-3. "If a contract fails to establish an essential term, and leaves the settling of that term to be agreed upon later by the parties to the contract, the contract is deemed an unenforceable 'agreement to agree.'" *Kreimer v. Kreimer*, 274 Ga. 359, 363, 552 S.E.2d 826, 829 (2001) (citation omitted). To interpret a contract, "[p]arol

evidence is inadmissible to add to, take form, or vary a written contract," but parol evidence may be used "if only a part of a contract is reduced to writing . . . and it is manifest that the writing was not intended to speak the whole contract." O.C.G.A. § 13-2-2(1).

**C.     Panaprint's Complaint**

C2 Multi Media and Cordaco Homes argue that "the alleged contracts are merely price quotations that are guaranteed and effective if and when Defendants place orders during the periods of time stated in the quotations." Doc. 2 at 5. Therefore, according to C2 Multi Media and Cordaco Homes, they have not "breached the terms of their respective quotation with Panaprint" by notifying Panaprint that they would not place orders in the future. *Id.* at 7. Plaintiff responds that "[b]y executing the quotations, Defendants were expressing their intention to purchase the quoted products in accordance with the terms of quotations on a monthly basis for the duration of the executed quotation." Doc. 9 at 11. The complaint alleges that "C2 Multi Media or Cordaco Homes contracted to do business with Panaprint by having an authorized representative sign or initial the quotation and returning it to Panaprint." Doc. 1-1 ¶ 11. The complaint also alleges that Panaprint "has entered into multiple contracts" with C2 Multi Media and Cordaco Homes since 2009. *Id.* ¶¶ 9-10.

But neither the complaint nor the alleged contract specify the quantity or the frequency to which C2 Multi Media and Cordaco Homes allegedly bound themselves. Both alleged contracts are entitled "quotation." *Id.* at 14, 17. Both specify that "[p]ayment terms are to be agreed upon." *Id.* at 15, 18. Both provide a range of options for quantity of magazines, as well as number of pages and number of "page cover;"

these options result in a price range for C2 Multi Media of $5,779 per order to $19,054 per order, and the price options for Cordaco Homes ranged from $3,841 per order to $4,802 per order—plus up to $560 extra for gloss options. *Id.* at 14, 17. The complaint does not allege any facts about Panaprint's previous dealings with C2 Multi Media or Cordaco Homes other than that Panaprint produced magazines for them "on a continuous and ongoing basis." *Id.* ¶¶ 9-10. Finally, the complaint does not discuss how C2 Multi Media or Cordaco Homes agreed to quantity and frequency.

Plaintiff raises arguments that perhaps, with a properly pleaded complaint, could be sufficient to state a claim, but the complaint as currently constituted does not contain those allegations. For example, nothing in the complaint establishes how to calculate quantities the Defendants obligated themselves to order. The complaint alleges that "[u]pon receipt of a binding agreement, Panaprint produced the contracted for products for the specified time period at the price set forth in the parties['] contractual agreement." Doc. 1-1 ¶ 11. But the complaint is silent as to the quantity and the number of pages per magazine specified by the parties, and the complaint is silent as to how those fundamental terms could be determined when the alleged contract contains a table with widely divergent options. *See id.* at 14, 17. The complaint and the contract are also both silent as to the frequency of orders. *See id.* Panaprint's briefing suggests these terms might be determined by course of prior dealings between the parties or industry custom, but those arguments are not in the complaint. *See generally* Doc. 9 at 8-11; *see id.* at 3 n.3 ("Plaintiff shows that discovery will reveal that the [alleged contract with C2 Multi Media] is a renewal of a prior quotation executed by Defendant that had expired by its own terms."). Accordingly, if Panaprint believes that it can, in good faith,

allege sufficient facts to state a claim for which relief can be granted, it shall amend its complaint within 14 days to do so. Otherwise, the complaint will be dismissed without prejudice.

### III. CONCLUSION

The Court accordingly **ORDERS** Panaprint to amend its complaint within 14 days of this Order if it believes it can, in good faith, allege sufficient facts to state a claim for which relief may be granted for breach of contract.

**SO ORDERED**, this 9th day of November, 2017.

S/ Marc T. Treadwell<br>
MARC T. TREADWELL, JUDGE<br>
UNITED STATES DISTRICT COURT